IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>FOX SUBACUTE AT MECHANICSBURG, LLC, FOX SUBACUTE AT CLARA BURKE, INC., FOX SUBACUTE AT SOUTH PHILADELPHIA, LLC and FOX NURSING HOME CORP. d/b/a FOX SUBACUTE AT WARRINGTON<br><br>Debtors. | CHAPTER 11<br><br>CASE NOS.   1:19-bk-04714-HWV<br>                        1:19-bk-04716-HWV<br>                        1:19-bk-04717-HWV<br>                        1:19-bk-04715-HWV<br><br>(Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ESTATES OF FOX SUBACUTE AT MECHANICSBURG, LLC, ET AL.[1]<br><br>Plaintiff,<br><br>v.<br><br>FOX SUBACUTE MANAGEMENT, INC.,<br><br>Defendant. | Adversary No. 22- |

**COMPLAINT TO AVOID TRANSFERS
PURSUANT TO 11 U.S.C. §§ 547 AND 548, RECOVER PROPERTY PURSUANT
TO 11 U.S.C. § 550 AND DISALLOW CLAIMS UNDER 11 U.S.C. § 502**

The Official Committee of Unsecured Creditors of the estates of Fox Subacute at

Mechanicsburg, LLC, Fox Subacute at Clara Burke, Inc., Fox Subacute at South Philadelphia,

---

[1] The Official Committee of Unsecured Creditors commences this lawsuit on behalf of the estates of Fox Subacute at Mechanicsburg, LLC, Fox Subacute at Clara Burke, Inc., Fox Subacute at South Philadelphia, LLC and Fox Nursing Home Corp. d/b/a Fox Subacute at Warrington, which cases are jointly administered.

8854297 v1

LLC and Fox Nursing Home Corp. d/b/a Fox Subacute at Warrington (hereinafter, the "Committee" or the "Plaintiff"), by its undersigned attorneys, in support of this complaint (the "Complaint") hereby alleges upon information and belief as follows:

## NATURE OF THE CASE

1. This Complaint seeks to avoid and recover from the above-named Defendant, or from any other person or entity for whose benefit the transfers were made, all transfers of property made for, or on account of, an antecedent debt, and to or for the benefit of the Defendant by the Debtors, as described herein, during the one-year period prior to the filing of the Debtors' bankruptcy petition, pursuant to 11 U.S.C. §§ 547 and 550. The Plaintiff also seeks to avoid and recover, pursuant to 11 U.S.C. §§ 548 and 550, and 12 Pa.C.S. §§5104 and 5105, any fraudulent transfers that the Defendant may have received. If the Defendant has filed a proof of claim or has otherwise requested payment from the Debtors or the Debtors' estates, (collectively, the "Claims"), the Plaintiff may seek certain relief pursuant to 11 U.S.C. § 502 as further stated below.

## PARTIES

2. Plaintiff is the Official Committee of Unsecured Creditors of the Estates of Fox Subacute at Mechanicsburg, LLC ("Fox Mechanicsburg"); Fox Subacute at Clara Burke, Inc. ("Fox Clara Burke"); Fox Subacute at South Philadelphia, LLC ("Fox South Philadelphia"); Fox Nursing Home Corp. d/b/a Fox Subacute at Warrington ("Fox Warrington" and collectively the "Debtors").

3. The Committee was granted the standing and authority to pursue this action by Order of this Court dated November 16, 2021 [Docket No. 570].

4. By virtue of that certain Tolling Agreement, as amended, the Defendant agreed to an extension of all applicable Statutes of Limitation through August 29, 2022. See Tolling Agreement, together with Sixth Amendment thereto, attached hereto as Exhibit "A" and incorporated herein.

5. Defendant Fox Subacute Management, Inc. ("Management") is a Pennsylvania corporation with an address of 251 Stenton Avenue, Plymouth Meeting, Pennsylvania 19462 and may be served with process in this action by mailing first class mail, postage prepaid, a true and correct copy of this Complaint and Summons pursuant to Federal Rule of Bankruptcy Procedure 7004(b).

6. James Foulke serves as president of Management and is its sole shareholder. James Foulke is also President and majority shareholder of each of the Debtors.

7. As a result, Management is an "insider" of the Debtors, as defined under 11 U.S.C. § 101(31).

**JURISDICTION**

8. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. The causes of action set forth herein concern the determination, allowance, and amount of claims pursuant to 11 U.S.C. §§ 502, 547, 548 and 550, and, as such, constitute "core" proceedings to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

9. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1408 and 1409.

# BACKGROUND

10. On November 1, 2019 (the "Petition Date"), the "Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code.

11. Since the Petition Date, the Debtors have remained in possession of their assets as Debtors-in-Possession. Their cases are being jointly administered.

12. All of the Debtors are either Pennsylvania corporations or limited liability companies engaged in the healthcare business and operation of skilled nursing facilities.

13. At all relevant times, Management provided certain accounting, financial and management services to each of the Debtors.

14. The services provided by Management are subject to certain Management Agreements dated July 1, 2019, executed by each of the Debtors and which are virtually identical in terms. See the "Management Agreements", attached hereto as Exhibits "B", "C", "D" and "E" and incorporated herein.

15. Each of the Management Agreements were for a term of five (5) years, and provided for payment of a monthly management fee equal to five percent (5%) of the "total operating revenue" for each month. See Management Agreement, Sec. 2.1(a).

16. The term "total operating revenue" is not defined in the Management Agreements.

17. At all times relevant, Management has calculated "total operating revenue" to include the applicable Debtors' monthly *sales*, regardless of whether revenues from such sales were collected.

18. The components of "sales" are: (a) room and board billed (not collected); (b) ventilator reimbursements billed (not collected); (c) therapy revenues billed (not collected); (d) an accrual for a daily bed rate of $130.00 expected to be collected; and (e) an accrual for the annual allocation from the Commonwealth of Pennsylvania in the annual amount of $1.5 million.

19. The Management Agreements were signed by James Foulke as "President and CEO" on behalf of both Management and each of the Debtors.

20. Upon information and belief, Management has no other clients, and has no other revenue sources aside from the Debtors.

21. During the one-year period prior to the Petition Date (the "Preference Period"), the Debtors paid to Management the following amounts: (a) the total amount of $840,000 from Fox Warrington; (b) the total amount of $1,403,500 from Fox Clara Burke; (c) the total amount of $2,023,000 from Fox Mechanicsburg; and (d) the total amount of $171,000 from Fox South Philadelphia.

22. In total, during the four-year period prior to the Petition Date, the Debtors paid to Management the approximate following amounts:

|  | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| Fox Warrington | $500,000 | $494,000 | $863,000 | $840,000 |
| Fox Clara Burke | $560,000 | $648,500 | $420,000 | $1,403,500 |
| Fox Mechanicsburg | $225,000 | $1,288,500 | $1,287,000 | $2,023,000 |
| Fox South Philadelphia | $0 | $42,000 | $0 | $171,000 |

5

## COUNT I
## AVOIDANCE OF PREFERENCE PERIOD PAYMENTS - 11 U.S.C. § 547

23. The Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

24. Payments totaling approximately $4,437,500 were made by the Debtors to the Defendant the Preference Period (the "Preferential Transfers").

25. The Preferential Transfers were to or for the benefit of the Defendant, a creditor within the meaning of 11 U.S.C. § 547(b)(1).

26. The Preferential Transfers were made for, or on account of, an antecedent debt or debts owed by the Debtors to the Defendant before such payments were made.

27. The Preferential Transfers were made while the Debtors were insolvent.

28. The Preferential Transfers were made during the Preference Period.

29. As a result of these payments, the Defendant received more than the Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) the Defendant received payment of its debts under the provisions of the Bankruptcy Code. Each of the Debtors' liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims against the Debtors.

30. In accordance with the foregoing, the payments are avoidable pursuant to 11 U.S.C. § 547(b).

31. During the course of this proceeding, the Plaintiff may learn (through discovery or otherwise) of additional transfers made by the Debtors to the Defendant during the Preference

6

Period. It is the Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest in property to or for the benefit of the Defendant or any other transferee. The Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Preferential Transfers, (ii) additional transfers, and/or (iii) additional defendants (collectively, the "Amendments"), that may become known to the Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and to request that the Amendments to relate back to this original Complaint.

## COUNT II
## TO AVOID FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(A)(1)(B)

32. The Plaintiff incorporates all preceding paragraphs as if set forth in full herein.

33. Between November 1, 2015 and the Petition Date, Management received the following payments from the Debtors: (a) the approximate total amount of $2,697,000 from Fox Warrington; (b) the approximate total amount of $3,032,000 from Fox Clara Burke; (c) the approximate total amount of $4,823,500 from Fox Mechanicsburg; and (d) the approximate total amount of $213,000 from Fox South Philadelphia (collectively, the "Fraudulent Transfers").

34. Subject to proof, the Plaintiff maintains that the Fraudulent Transfers were not made on account of an antecedent debt owed by the Debtors, or were prepayments for goods subsequently received, and that the Debtors did not receive reasonably equivalent value in exchange for the Fraudulent Transfers.

35. The Debtors: (i) were insolvent on the dates that the Fraudulent Transfers were made or became insolvent as a result of the Fraudulent Transfers or (ii) were engaged in business or a transaction, or was about to engage in business or a transaction, for which any property

7

Case 1:22-ap-00039-HWV    Doc 1    Filed 08/26/22    Entered 08/26/22 12:04:19    Desc
Main Document    Page 7 of 12

remaining with the Debtors was an unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

36. The Fraudulent Transfers are avoidable pursuant to 11 U.S.C. §548(a)(1)(B).

## COUNT III
## TO AVOID FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544 AND PENNSYLVANIA UNIFORM FRAUDULENT TRANSFER ACT 12 PA.C.S. §§ 5104 AND 5105

37. The Plaintiff incorporates all preceding paragraphs as if set forth in full herein.

38. Pursuant to Pennsylvania Uniform Fraudulent Transfer Act 12 Pa.C.S. §§ 5104 and 5105, made applicable hereto pursuant to 11 U.S.C. § 544, the Fraudulent Transfers were actually and/or constructively fraudulent.

39. At all times relevant to the Fraudulent Transfers, there was and is at least one or more creditors who have held or hold matured or unmatured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

40. Defendant received the Fraudulent Transfers within four (4) years of the Petition Date.

41. The Debtors made the Fraudulent Transfers to Defendant with the actual intent to hinder, delay or defraud its creditors, or without the Debtors receiving a reasonably equivalent value in exchange for the Fraudulent Transfers.

42. At the time of the Fraudulent Transfers, the Debtors were insolvent, or became insolvent as a result thereof.

43. At the time of Fraudulent Transfers, the Debtor wwereas engaged in a business or a transaction, or was about to engage in a business or transaction, for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction; or the Debtors intended to incur, or believed or reasonably should have believed that the Debtors would incur, debts beyond such Debtor's ability to pay as they became due.

44. Defendant is the initial transferee, or immediate or mediate transferee of the initial transferee, of each of the Fraudulent Transfers.

45. Accordingly, the Fraudulent Transfers are avoidable by the Trustee as fraudulent transfers under the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5104 and §5105 and pursuant to section 544(b) of the Bankruptcy Code.

## COUNT IV
## RECOVERY OF AVOIDED TRANSFERS - 11 U.S.C. § 550

46. The Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

47. The Preferential Transfers and the Fraudulent Transfers are collectively referred to as the "Avoidable Transfers."

48. The Plaintiff is entitled to avoid the Avoidable Transfers pursuant to 11 U.S.C. §§ 544, 547(b) and 548.

49. The Defendant was the initial transferee of the Avoidable Transfers, or the immediate or mediate transferee of such initial transferee, or was the person/entity for whose benefit the transfer was made.

50. Pursuant to 11 U.S.C. § 550(a), the Plaintiff is entitled to recover from the Defendant the Avoidable Transfers, plus interest thereon to the date of payment and the costs of this action.

## COUNT V
## DISALLOWANCE OF ALL CLAIMS - 11 U.S.C. § 502(D) AND (J)

51. The Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

52. The Defendant is the party from whom property is recoverable under 11 U.S.C. § 550.

53. The Defendant is the transferee of the Avoidable Transfers, which are avoidable under 11 U.S.C. §§ 544, 547 and 548.

54. The Defendant has not paid the amount of the Avoidable Transfers, or turned over such property, for which the Defendant is liable under 11 U.S.C. § 550.

55. Pursuant to 11 U.S.C. § 502(d), any and all Claims of the Defendant, and/or its assignees, against the Debtors' estates must be disallowed until such time as the Defendant pays to the applicable Debtors' estates an amount equal to the aggregate amount of all of the avoidable and/or recoverable Avoidable Transfers, plus interest thereon and costs.

56. Pursuant to 11 U.S.C. § 502(j), any and all Claims of the Defendant and/or its assignees, against the Debtors' estates previously allowed must be reconsidered and disallowed until such time as the Defendant pays to the applicable Debtors' Estates an amount equal to the aggregate amount of all of the avoidable and/or recoverable Avoidable Transfers, plus interest thereon and costs.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff respectfully requests that this Court enter an Order providing the following relief against the Defendant:

(a) That the Avoidable Transfers be avoided under 11 U.S.C. §§ 547 and 548, and the Pennsylvania Uniform Fraudulent Transfer Act 12 Pa.C.S. §§ 5104 and 5105, made applicable hereto pursuant to 11 U.S.C. § 544, and judgment be entered in favor of the Plaintiff and against the Defendant;

(b) That the Avoidable Transfers, to the extent that they are avoided pursuant to 11 U.S.C. §§ 547, 548 and/or 12 Pa.C.S. §§ 5104 and 5105 be recovered by the Plaintiff for the benefit of the respective Debtors' estates pursuant to 11 U.S.C. § 550;

(c) That any Claims held by the Defendant and/or its assignees be disallowed until the Defendant can satisfy the judgment being granted in this action, in accordance with 11 U.S.C. § 502(d) and (j);

(d) That any Claims held by the Defendant be expunged as a result of the application of 11 U.S.C. § 558;

(e) That pre-judgment interest be awarded at the maximum legal rate running from the date of each Avoidable Transfer to the date of judgment herein;

(f) That post-judgment interest be awarded at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

(g) That the Defendant be required to pay forthwith the judgment amount awarded in favor of the Plaintiff; and

(h) That the Plaintiff be granted such other and further relief as the Court deems just and proper.

**FLASTER/GREENBERG P.C.**

**/s/ Harry J. Giacometti**

Dated: August 26, 2022

Harry J. Giacometti, Esquire
Damien N. Tancredi, Esquire
1717 Arch Street, Suite 3300
Philadelphia, PA 19103
(215) 587-5680
Harrry.giacomettti@flastergreenberg.com
*Counsel to the Official Committee of Unsecured Creditors*

12